IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON P. ANDERSON,

       Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

Civ. No. 10-151-AA

OPINION AND ORDER

_____

AIKEN, Chief Judge:

      Plaintiff Jason Alexander ("Alexander") seeks judicial review of the Social Security

Commissioner's final decisions denying his application for Supplemental Security Income under

Title XVI of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. §

405(g). The Commissioner's decision is REVERSED and REMANDED for an award of benefits.

## **BACKGROUND**

      Born in 1983 (Tr. 148), Anderson was awarded child disability insurance benefits for an

unspecified impairment in September 1994. Tr. 15.[1]  The Commissioner found that Anderson's

disability ceased in August 2002.  *Id.*  Anderson has a general equivalency degree ("GED") (Tr.

156), and has worked as a dishwasher.  Tr. 154.

Anderson applied for SSI on June 21, 2006 (Tr. 139-41), alleging disability due to attention

deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress

disorder ("PTSD"), and bipolar disorder.  Tr. 153.  The Commissioner denied that application

initially and upon reconsideration.  Tr. 74-75.  On October 21, 2008, prior to a scheduled hearing,

the ALJ returned the matter to state disability determination services for consideration of new

evidence submitted just prior to the scheduled hearing.  Tr. 25-26.

The ALJ subsequently held a hearing on July 16, 2009 (Tr. 27-73), and the ALJ found

Anderson not disabled on July 29, 2009.  Tr. 15-24.  On December 14, 2009, the Appeals Council

accepted additional evidence into the record (Tr. 4), but denied review of the matter.  Tr. 1-3.

Anderson again appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482

U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(I).  At step two, the ALJ determines

if the claimant has "a severe medically determinable physical or mental impairment" that meets the

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed by the Commissioner on August 5, 2010 (docket # 11).

twelve month duration requirement. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e) Social Security Ruling ("SSR") 96-8p (available at 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration

the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.920(g).

## THE ALJ'S FINDINGS

The ALJ first noted Anderson's child disability benefits award, and that these benefits ceased in August 2002. Tr. 15.

Regarding Anderson's present application for benefits, the ALJ found that Anderson was not performing substantial gainful activity in the period following his alleged onset date, and that Anderson's personality disorder, mood disorder, and substance abuse were "severe" impairments at step two in the sequential proceedings. Tr. 17. The ALJ found Anderson's obesity non-severe. Tr. 17-18.

At step three, the ALJ found that Anderson's mental impairments did not meet a disorder "listed" in the Commissioner's regulations. Tr. 18. Here the ALJ cited the regulations pertaining to Affective Disorders (20 C.F.R. § Pt. 404, Subpt. P. App. 1 § 12.04), Anxiety-Related Disorders (*id.* at § 12.06), and Substance Addiction Disorders (*id.* at § 12.09). *Id.* The ALJ subsequently found that Anderson retained the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform and follow simple to complex duties and instructions. He is able to work independently, but not as part of a work crew. He should not interact with the general public. Lastly, the claimant should work in an environment with a set work place and routine.

Tr. 18.

At step four, the ALJ found that Anderson had no past relevant work. Tr. 22. Citing the Commissioner's medical-vocational guidelines, and drawing upon the testimony of a vocational

expert, the ALJ found that Anderson could perform work in the national economy at step five. Tr. 22-23. The ALJ therefore found Anderson not disabled. Tr. 23-24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Anderson challenges the ALJ's evaluation of examining psychologist David Truhn, Ph.D., examining psychologist Sue Montgomery, Ph.D., and the lay witness testimony. Anderson also challenges the ALJ's step three findings regarding his mental impairments, and the conclusion at step

five that he was not disabled.

## I.    Medical Source Statements

### A.    Standards

The Commissioner's regulations distinguish between treating, examining, and reviewing physicians. 20 C.F.R. § 416.927(d),(f). The ALJ must generally accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

### B.    Examining Psychologist David Truhn, Ph.D.

Anderson argues that the ALJ improperly assessed the 2008 opinions of examining psychologist David Truhn, Ph.D., specifically asserting that these opinions establishes that he meets the commissioner's listings at step three. Pl.'s Opening Br. 12. The Commissioner responds that the ALJ properly rejected Dr. Truhn's opinion based upon his "invalid" test results, and asserts that Dr. Truhn's opinion fails to establish that Anderson met the Commissioner's listing. Def.'s Br. 6, 8. The court presently considers the ALJ's analysis of Dr. Truhn's opinion, and separately addresses the arguments pertaining to the ALJ's step three and five findings.

### 1.    Dr. Truhn's Opinion

Examining psychologist Dr. Truhn evaluated Anderson for the Oregon state Department of Human Services ("DHS") on August 20, 2008.  Tr. 292-308.  On October 18, 2008, Dr. Truhn additionally completed a form addressing the severity of Anderson's impairments.  Tr. 310-13.

Dr. Truhn's August 2008 evaluation included an extensive mental status examination which discussed noted Anderson's history, specifically addressing his social, academic, vocational, mental health, substance abuse, and medical histories.  Tr. 295-99.  Dr. Truhn also performed psychometric and personality testing, and reviewed Anderson's DHS records pertaining to his allegedly deficient parenting of his infant daughter.  Tr. 300-02.

Dr. Truhn administered several psychometric tests, including an intelligence test, test for cognitive deficits, personality test, and clinical inventory test.  Tr. 300-02.  Dr. Truhn found Anderson's score "invalid" on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2").  Tr. 201.  Regarding Anderson's Million Clinical Multiaxial Inventory-III test results, Dr. Truhn noted that Anderson responded "in a fashion that seemed to have a tendency to over endorse and present problem personality characteristics although not to the extent as to invalidate the profile."  Tr. 301.

Following discussion of Anderson's history, clinical presentation, and test results, Dr. Truhn diagnosed alcohol abuse, cannabis abuse, depressive disorder (no onset specified), panic disorder without agoraphobia, and antisocial personality disorder with narcissistic features.  Tr. 304.  Dr. Truhn also assessed a rule-out diagnosis of cannabis dependence.  *Id.*

On October 18, 2008, Dr. Truhn completed a statement regarding the severity of Anderson's limitations.  Tr. 310-13.  The instructions associated with this form stated that a "severe"

endorsement describes a "limitation which precludes the individual's ability usefully to perform the designated activity or to sustain performance of the designated activity." Tr. 310.

Dr. Truhn indicated that Anderson had correspondingly "severe" dysfunction in his ability to preform activities within a schedule, maintain an ordinary routine without supervision, work in proximity to others without distraction, accept workplace instructions and respond appropriately, get along with peers, and maintain socially appropriate behavior and hygiene. Tr. 311.

### 2.    The ALJ's Findings

The ALJ discussed Dr. Truhn's opinion in construing his RFC between steps three and four of the sequential proceedings. Tr. 20-21. The ALJ first cited Dr. Truhn's findings regarding Anderson's substance abuse (Tr. 20), and again cited Dr. Truhn's report in finding that Anderson's record suggested malingering, with invalid test scores and exaggerated symptom reporting. Tr. 20.

The ALJ subsequently addressed Dr. Truhn's substantive opinion and found it "internally inconsistent." Tr. 21-22. The ALJ did not address Dr. Truhn's diagnoses. The ALJ found Dr. Truhn's opinion regarding Anderson's inability to work most likely impacted by his antisocial personality disorder, and cited Dr. Truhn's finding that Anderson's "use of mood-altering substances also impacts these abilities." Tr. 21. The ALJ also found Dr. Truhn's "severe" assessment of Anderson's social difficulties inconsistent with the record, and noted that Dr. Truhn found Anderson to be "cooperative, appropriate, exhibiting good eye contact and normal speech." *Id.* Finally, the ALJ found that Dr. Truhn failed to account for Anderson's invalid scores on tests administered by Dr. Truhn. Tr. 22.

The ALJ's findings are not based upon the record. Most notably, the ALJ misconstrued Dr.

Truhn's interpretation of his psychometric testing. Dr. Truhn's opinion states that Anderson's first personality test, the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), produced an "invalid" profile, but that a subsequent test, the Million Clinical Mulitaxial Inventory-III, produced a "valid" profile. Tr. 301. Dr. Truhn based his diagnoses and clinical conclusions upon all of Anderson's testing and clinical data reviewed in concert. Tr. 304. Dr. Truhn did not suggest that Anderson's MMPI-2 test results invalidated his clinical opinion. While the ALJ may reject opinions unsupported by clinical notes or findings, *Bayliss*, 427 F.3d at 1216, the ALJ may not make his findings by isolating a quantum of evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The ALJ's inference that Anderson's MMPI-2 test results invalidates Dr. Truhn's entire opinion is not based upon the record or the proper legal standards.

The ALJ also found Dr. Truhn's assessment regarding Anderson's "severe" social dysfunction unsupported by Dr. Truhn's own opinion. The ALJ inferred that Dr. Truhn's finding that Anderson exhibited normal eye contact and speech, with appropriate affect and no evidence of disordered thought contradicted Dr. Truhn's conclusion that Anderson experienced "severe" social dysfunction. Tr. 21. Dr. Truhn based his findings regarding Anderson's social dysfunctionality upon Anderson's test results, clinical history, and review of psychologist Dr. Montgomery's treatment records. Tr. 295-303. Further, the record shows that Dr. Truhn's "behavioral observations" noted Anderson's eye contact and speech, but also specifically stated that Anderson "seemed to have an external locus of control and tended to blame others and not take responsibility for his behavior." Tr. 293. Therefore, the ALJ did not acknowledge Dr. Truhn's complete opinion on this matter.

The ALJ's assessment of Dr. Truhn's opinion so far as it pertained to Anderson's clinical

presentation selectively reads the record. As noted, such analysis is inappropriate. *Lingenfelter*, 504 F.3d at 1035.

For these reasons, the ALJ's consideration of Dr. Truhn's opinion is not sustained.

### C.    Sue Montgomery, Ph.D., Q.M.H.P.

Anderson also challenges the ALJ's evaluation of Sue Montgomery, Ph.D., Q.M.H.P. ("Qualified Mental Health Professional"). Anderson makes no specific challenge to the ALJ's treatment of Dr. Montgomery's[2] opinion, arguing only that Dr. Montgomery's opinion establishes that Anderson is unable to sustain employment because he is unable to accept workplace instruction and supervision. Pl.'s Opening Br. 17. The Commissioner cites Dr. Montgomery's opinion, but does not answer Anderson's argument. Def.'s Br. 9-11.

The ALJ did not discuss Dr. Montgomery's opinion, although he cited it in support of his finding that Anderson "admits to substance abuse." Tr. 20 (citing Ex. 13F at 5).

Dr. Montgomery submitted a letter to the record on June 5, 2008. Tr. 287-91. Dr. Montgomery stated that she had obtained and reviewed "what looks to be all" of Anderson's childhood treatment records at the Albertina Kerr center. She first noted that Anderson's history of neglect was well-documented in these records, and that "it appears the neglect and abuse was severe." Tr. 287.

Dr. Montgomery first wrote that, "Mr. Anderson presents as severely impaired by what should now be most likely diagnosed as Antisocial Personality Disorder, or in childhood, Conduct Disorder." Tr. 287. She also stated that his post-traumatic stress disorder ("PTSD"), also diagnosed

---

[2]Plaintiff refers to this practitioner as "therapist Montgomery." Because the record indicates that Montgomery has a Ph.D., the court refers to her as "Dr. Montgomery."

at Albertina Kerr, continued at present. *Id.* Dr. Montgomery then discussed, in some detail, the diagnostic parameters for Oppositional Defiant Disorder, Conduct Disorder, and Antisocial Personality Disorder. Tr. 287-290. Dr. Montgomery concluded that, "Conduct Disorders are persistent and early onset increases the likelihood of a worse prognosis." Tr. 291. She also stated that if Anderson were diagnosed with an Antisocial Personality Disorder, his behavior would be inflexible and unchanging. For these reasons she concluded, "it is unlikely that either an early onset Conduct Disorder or a Personality Disorder is going to have significantly reduced symptoms. I do not expect to see that happen in this case." Tr. 291. Finally, Dr. Montgomery wrote, "as far as onset goes, I would carry his inability to function in the workplace (or life in general) as severely impaired since his [childhood] admission to Albertina Kerr and likely prior to that." *Id.*

Dr. Montgomery also treated Anderson between October 29, 2007, and October 27, 2008. Tr. 338-354. During this time Dr. Montgomery assessed PTSD, bipolar disorder, and a personality disorder with borderline, antisocial, and narcissistic traits. *Id.* On October 27, 2008, she specifically concurred with Dr. Truhn's assessment regarding Anderson's personality disorder and behavioral traits. Tr. 338. Dr. Montgomery concluded that Anderson's personality disorder "by definition severely impairs his ability to sustain employment beyond entry-level, extremely short-term jobs. It is unlikely that any combination of therapy and medication will significantly change this prognosis." *Id.*

The ALJ omitted consideration of this opinion, except as it pertains to Anderson's substance abuse. As noted, the ALJ may not selectively read the record. *Lingenfelter*, 504 F.3d at 1035. Further, an ALJ's omission of evidence is harmless only when the reviewing court can confidently

11 - OPINION AND ORDER

conclude that no reasonable ALJ, when fully crediting the omitted testimony, could reach a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Because Dr. Montgomery stated that Anderson would likely be able to maintain only "extremely short term jobs" (Tr. 338), this court concludes that this testimony is significant to the ultimate determination of disability at step five. The ALJ therefore erred in omitting treating psychologist Dr. Montgomery's opinion.

The effect of the ALJ's errors regarding Drs. Truhn and Montgomery are discussed below.

## II.    Lay Testimony

Anderson challenges the ALJ's analysis of testimony submitted by his mother, Christine Anderson. Pl.'s Opening Br. 17-18.

### A.    Standards

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

### B.    Analysis

Christine Anderson submitted a third-party witness statement to the record on August 1, 2006. Tr. 158-163. Ms. Anderson stated that Anderson is homeless, but that he spends his days at her house. Tr. 158, 162. During this time Anderson does housework, cooks his own meals, eats,

sleeps, and watches television, and plays on her computer. Tr. 158. He leaves each evening between 10.30 and 11.00 p.m. *Id.* Ms. Anderson stated that her son's condition has worsened, but that "he has had mental issues for so long its hard to think what has changed." Tr. 159. She also stated that Anderson has a hard time going to sleep, but sometimes sleeps all day. *Id.*

Ms. Anderson wrote that her son must do chores in order to visit her house, and that he "has no concept of money. No concept of needing electric [sic] and such. He does understand that if you want things you have to pay." Tr. 161. She also indicated that Anderson has difficulty lifting and reaching due to an unspecified left shoulder problem, and has difficulty with memory, completing tasks, following instructions, and getting along with others. Tr. 163. He "sometimes" has difficulty with concentration and understanding. *Id.* Finally, Ms. Anderson described an incident occurring during Anderson's employment at Taco Bell that culminated in Anderson hitting a customer with a bag of food because the customer allegedly called him names. Tr. 164. She explained that Anderson "gets angry easily." *Id.*

The ALJ found Ms. Anderson's statement that her son is homeless "inconsistent and hard to comprehend" in light of her statements that he spends his days at her home. Tr. 19. The ALJ then reiterated Ms. Anderson's testimony regarding Anderson's difficulty sleeping and conduct at Taco Bell. Tr. 20. The ALJ made no identifiable conclusion regarding his acceptance or rejection of Ms. Anderson's testimony. *Id.*

Anderson correctly asserts that the ALJ failed to properly identify his conclusions regarding Ms. Anderson's testimony. Pl.'s Opening Br., 18. Further, the ALJ's analysis of Anderson's alleged homelessness does not reflect Ms. Anderson's testimony. Ms. Anderson clearly stated that her son

did not sleep at her house, and was not allowed to sleep at her house. The use of Ms. Anderson's home during daytime hours, in exchange for chores performed, does not contradict her statement that Anderson is homeless. The arrangement may be novel, but it does not establish that Ms. Anderson's testimony is internally contradictory and consequently unreliable.

For these reasons, the ALJ's implied rejection of Ms. Anderson's testimony is not sustained. The effects of this error are discussed below.

## III.   Step Three Findings

Anderson asserts that the ALJ should have found that his personality met or equaled Listing 12.08, which addresses personality disorders, at step three in the sequential proceedings. Pl.'s Opening Br. 10. The ALJ considered the Commissioner's step three Listings pertaining to affective and anxiety disorders, as well as substance abuse. Although the ALJ found Anderson's personality disorder "severe" at step two in the sequential proceedings (Tr. 17), he did not consider the step three Listing pertaining to Anderson's personality disorder.

Listing 12.08 first explains that, "a personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08. To "meet" this Listing a claimant's impairment must satisfy specified criteria under two prongs.

First, a claimant must establish that he has a "deeply ingrained maladaptive patterns of behavior associated with one of six specified traits. These are (1) seclusiveness or autistic thinking;

(2) pathologically inappropriate suspiciousness or hostility; (3) oddities of thought, perceptions, speech and behavior; (4) persistent disturbances of mood or affect; (5) pathological dependence, passivity, or aggressivity; or (6) intense and unstable interpersonal relationships and impulsive and damaging behavior. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08(A). Once the claimant establishes that he meets this "A" criteria, he must also establish that he meets specified "B" criteria. Here the claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in concentration, persistence, and pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08(B).

The Commissioner asserts that the ALJ properly found that Anderson did not meet Listing 12.08 "because substantial evidence within the record supported the ALJ's conclusion that Plaintiff did not meet the required Paragraph B criteria." Def.'s Br. 8. The Commissioner then points to the opinion of reviewing psychologist Robert Henry, Ph.D., but concludes that the ALJ "discounted Dr. Henry's opinion to arrive at his more limited Paragraph B determinations . . . ." *Id.* The Commissioner does not explain the manner in which the ALJ's ultimate conclusion regarding the "B" criteria was based upon the record. This argument therefore fails to address whether the ALJ's step three findings regarding Listing 12.08 were supported by substantial evidence.

Anderson points to the opinions of Drs. Truhn and Montgomery, as well as the 1993 opinion of Grant Godbey, M.D., to establish that he meets both the "A" and "B" criteria under Listing 12.08. Pl.'s Opening Br., 10-11.

The ALJ found that Anderson has a personality disorder. Tr. 17. The matter therefore turns

upon whether Anderson meets the "B" criteria to establish that he is disabled under Listing 12.08. The "B" criteria requires "marked" dysfunction in one of the categories noted above, or repeated episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08(B). The Commissioner's Listings addressing mental impairments repeatedly emphasize that it does not define "marked" by a specific number of restrictions, but state that "a marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to seriously interfere with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.

Dr. Truhn completed a statement regarding the severity of Anderson's limitations on October 18, 2008. Tr. 310-13. The instructions associated with this form instructed that "severe" indicates a "severe limitation which precludes the individual's ability usefully to perform the designated activity or to sustain performance of the designated activity." Tr. 310.

Dr. Truhn indicated that Anderson had correspondingly "severe" dysfunction in his ability to preform activities within a schedule, maintain an ordinary routine without supervision, work in proximity to others without distraction, accept workplace instructions and respond appropriately, get along with peers, and to maintain socially appropriate behavior and hygiene. Tr. 311. This opinion, while similar to the Commissioner's instructions regarding "marked" limitations pertaining to mental impairments, does not establish that Anderson has the requisite restrictions in activities of daily living, social functioning, concentration, persistence, and pace, or decompensation indicated by the regulation pertaining to personality disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08(B). Anderson therefore fails to show that Dr. Truhn's opinion establishes that he meets the Listing.

Dr. Montgomery assessed no specific functional limitations relevant to the "B" criteria. Dr. Montgomery's June 5, 2008, opinion addresses Anderson's parenting skills, and notes only that "he has been unable to sustain any job for more than a short period." Tr. 290. Dr. Montgomery's October 27, 2008, letter stated that individuals with Anderson's personality disorder diagnosis "lack the requisite motivation and work ethic to sustain work for more than a brief period," and "find it difficult to learn from their mistakes, as the conscience and motivation to change are lacking." Tr. 338. These opinions do not establish that Anderson meets specified "B" criteria for Listing 12.08.

Finally, Anderson points to the October 26, 1993, opinion of treating physician Dr. Godbey, who assessed Anderson at the Albertina Kerr center when Anderson was approximately ten years old. Pl.'s Opening Br. 10-11. Anderson's indicated citation points to Dr. Godbey's October 26, 2003, pre-admission note, which assessed major depression, post-traumatic stress disorder, and oppositional defiant disorder. Tr. 880. None of these diagnoses relate to the § 12.08 "B" criteria. Therefore, Dr. Godbey's opinion is presently irrelevant.

In summary, Anderson fails to establish that the opinions of Drs. Truhn, Montgomery and Godbey establish that he meet Listing § 12.08.

## IV.    Step Five Findings

Finally, Anderson asserts that the ALJ erroneously found that he could perform work in the national economy at step five in the sequential proceedings. Pl.'s Opening Br. 18-20.

### A.    Social Security Ruling 85-15

Anderson asserts, without citation, that SSR 85-15, in combination with Dr. Truhn's opinion, establishes that he cannot perform work in the national economy at step five in the sequential

proceedings. Pl.'s Opening Br., 19.  SSR 85-15, entitled, "Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," as quoted by Anderson (Pl.'s Opening Br. 19) states,

> Where a person's only impairment is mental, is not of listing severity, but does prevent a person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work.

SSR 85-15 at *4 (available at 1985 WL 56857).  This language applies to a claimant with past relevant work.  The ALJ presently found that Anderson does not have past relevant work, and that transferability of skills from such work is therefore irrelevant.  Tr. 22.  Anderson does not challenge these findings.  For this reason, Anderson's citation to the Commissioner's indicated ruling is inappropriate.

## B.    Vocational Expert's Testimony

At step five, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy.  *Tackett*, 180 F.3d at 1101.  The ALJ's questions to the vocational expert must include all properly supported limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  Here, the ALJ obtained vocational expert testimony based upon Dr. Truhn's opinion (Tr. 69), but did not rely upon that testimony in his opinion.  Tr. 23.  Because the ALJ improperly rejected Dr. Truhn's opinion, this court cannot sustain his omission of the vocational expert's related testimony.  Thus, the ALJ's step five finding cannot not be sustained.

## <u>REMAND</u>

The ALJ erroneously evaluated the opinions of Drs. Truhn and Montgomery, and the lay

witness testimony.  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.*  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348).

Here, the ALJ failed to properly evaluate Dr. Truhn's opinion, Dr. Montgomery's opinion, and the lay testimony.  The ALJ's subsequent RFC assessment is therefore not based upon the proper legal standards.

Dr. Truhn's October 18, 2008, statement indicated that Anderson's impairments preclude him

from performing activities within a schedule and maintaining regular work attendance, sustaining an ordinary routine without special supervision, working in coordination or proximity to others, completing a normal work week, accepting instructions and responding appropriately to workplace criticism, getting along with peers, and unable to maintain socially appropriate behavior. Tr. 310-11. Dr. Montgomery stated that Anderson's personality disorder would restrict Anderson to performance of short-term entry-level jobs only. Tr. 338. Finally, Ms. Anderson stated that Anderson has unspecified difficulties with his memory, completing tasks, following instructions, getting along with others, concentrating, and understanding. Tr. 163. She also described Anderson's erratic workplace behavior. *Id.*

This evidence all points towards a finding of disability. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen*, 879 F.2d 498, 503-04 (9th Cir. 1989). The court therefore credits this evidence and now discusses the effect of the credited testimony and medical opinions under the second and third prongs of the credit-as-true analysis.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong. *Strauss*, 635 F.3d at 1138. Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Id.* Specifically, Dr. Truhn stated that Anderson is unable to maintain an ordinary routine, work in proximity to others, accept workplace instructions, and maintain socially appropriate behavior. Tr. 311. The vocational expert, as noted,

testified that Dr. Truhn's limitations, taken individually, would preclude performance of work in the national economy. Tr. 69. This testimony establishes that Anderson is unable to perform work in the national economy at step five in the sequential proceedings. Consequently, Anderson is disabled under the Commissioner's regulations.

## **CONCLUSION**

For these reasons, this Court REVERSES the Commissioner's decision and REMANDS this matter pursuant to 42 U.S.C. § 405(g) for calculation and award of benefits consistent with this opinion.

IT IS SO ORDERED.

Dated this *15* day of June, 2011.


Ann Aiken
United States District Judge